

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable T. M. Trimble, First Assistant
State Superintendent of Public Instruction
Austin, Texas

Dear Sir:

Opinion No. O-4652
Re: Whether negro students may be
trained in school building for
white students at a time when
building is not used by white
students.

We have received your letter of June 16, 1942,
which we quote in part as follows:

". . . .

"'It has been requested that school shops
owned and operated by the public schools in
Abilene, Texas, in connection with their Senior
High School for white students be operated dur-
ing one 8-hour period of the day for the train-
ing of Negroes. During the period of time that
the shop would be used for training Negroes,
there would be no white people in the shops,
but there would naturally be an intermingling
of Negroes and white people at the beginning
and end of the working period.

"'Under the circumstances mentioned above,
may the board of trustees of this school dis-
trict permit the Negroes to use the school build-
ing, now being used by the white students, for
the purpose of training Negro students?'

". . . ."

You have further informed us that the machine shops
are in a building separate from and not a part of the regular

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

high school building, and that the 6-hour period which is to be used for the training of negro students will not be at a time when the high school building is being used for the teaching of white pupils.

Your question involves a construction of certain of our Constitutional and statutory provisions. Section 7 of Article VII, Constitution of Texas, and Article 2900, Revised Civil Statutes of 1925, provide respectively as follows:

"Sec. 7. Separate schools shall be provided for the white and colored children, and impartial provision shall be made for both."

"Art. 2900. (2897-8) Separate schools

"All available public school funds of this State shall be appropriated in each county for the education alike of white and colored children, and impartial provisions shall be made for both races. No white children shall attend schools supported for colored children, nor shall colored children attend schools supported for white children. The terms 'colored race' and 'colored children', as used in this title, include all persons of mixed blood descended from negro ancestry."

Your question necessarily resolves itself into a determination of what is meant by the term "separate schools". In other words, if it is meant that separate buildings shall in all events be provided for, then your question must be answered in the negative; for in the fact situation as outlined in your letter, negro students would be trained in the building used by white students. However, if separate buildings, as such, is not meant, then a different result might reasonably be reached.

A number of other states have provisions similar to those of this State. The constitutionality of these provisions has been sustained, so long as the accommodations and facilities provided are substantially the same for each race. 11 C. J. 806; 14 C. J. S. 1172. We have made an exhaustive search of the authorities of this State and others, but we have found no case on the precise point involved in this opinion. Therefore, we must resort to analogous authorities and construe Section 7 of Article VII and Article 2900 in the light of such authorities.

"School" is defined by Webster's New International Dictionary of the English Language, Unabridged (Second Edition, 1938), as follows:

"1. An institution for teaching children. . . Hence: a The body of pupils attending a school. b A session of an institution of instruction. . . c Eng. A group of classes; also, a form. d A building or room given over to instruction; a schoolhouse. . . .

". . .

"4. The process of being instructed or educated in institutions for teaching the young. . ."

The following definition, among others, is given by the same authority for the adjective "separate":

"1. a Unconnected; not united or associated; distinct;. . . .

"2. Being apart from another or others; withdrawn from social intercourse; solitary; secluded; as separate confinement.

". . . . ."

We see that the word "school" may mean a building, or it may mean something more fundamental; that is, the "process of being instructed or educated". We are inclined to accept the latter meaning as the one intended by the framers of the Constitution when they promulgated Section 7 of Article VII.

We are strengthened in our view by the following definitions of the word "school" which appear in Words and Phrases, Permanent Edition, Volume 38, pages 305,306:

"'School' is a generic term, and denotes an institution for instruction or education. American Asylum of Deaf and Dumb v. Phoenix Bank, 4 Conn. 172, 177, 10 Am. Dec. 112."

"A 'school' is an institution of learning below a college or university, a place of primary

instruction, and generally refers to common or
public schools maintained at the expense of the
public, and is a generic term, and denotes an in-
stitution for instruction or education, and is
not measured by the walls of a building. State
v. Kelaher, 129 N. W. 1060, 1061, 145 Wis. 243."

We quote the following excerpt from the case of Burnside v.
Douglas School Dist. No. 27, of Cochise County, et al., 261
P. 629 (Sup. Ct., Ariz., 1927):

"The words 'high school', unless it clearly
appears by the context they have some other mean-
ing, always refer to the organization for the pur-
pose of imparting instruction, and not to any par-
ticular structure used by such organization."

In the case of State ex rel. Black v. Board of
Directors of School Dist. No. 16, Montgomery County, 242
S. W. 545 (1922), the Supreme Court of Arkansas had before
it a statute similar in verbage to the one under considera-
tion. We quote the following from the opinion of the court:

"The purpose and intent of the statute was
to prevent social equality or intermingling of
the white and African races, thereby maintaining
harmony and peace in the schools. . . ."

We believe that the purpose of our Constitutional
and statutory provisions is the same as that expressed above.
In other words, so long as the organization or process of
education is in fact kept entirely apart and separate and
members of the two races are withdrawn from social intercourse,
the prohibition of Section 7 of Article VII and Article 2900
is not violated. Certainly, our Constitution would inhibit
the teaching of white students and negro students in the same
building or classroom at the same time. However, this pro-
hibition is not limited to the teaching of students in the
same classroom or building; it would prohibit the teaching
at the same time of students of both races in classes held
outside the building. The prohibition applies to the physi-
cal segregation of the white and colored students.

In your letter you state that no white persons would
be in the building while the negro students were being trained.

There would, therefore, be segregation of white and colored students, and there would be no intermingling of members of the two races. It is our opinion that the Constitution and statutes of Texas would not be violated.

Our conclusion is strengthened by Article 2755, Revised Civil Statutes of 1925, which originally was part of the same act, as Article 2900 (Acts 1905, Ch. 124, S. B. 218, p. 263). Article 2755 reads as follows:

"A school house constructed in part by voluntary subscription by colored parents or guardians, and for a school for colored children, shall not be used for white children without the consent of the trustees of the district, and a like rule shall protect the use of school houses erected in part by voluntary subscription of white parents or guardians for the benefit of white children."

This statute certainly indicates the Legislative intent that Article VII, Section 7 of our Constitution does not prohibit the use by scholastics of one race of a school building for scholastics of the other race when there is segregation of such scholastics.

We are not unmindful of the fact that the Supreme Court of North Carolina has reached a seemingly different conclusion. See Whitford v. Board of Commissioners of Craven County (1912), 74 S. E. 1014 and Lowery v. Board of Graded School Trustees in Town of Kernersville (1905), 52 S. E. 267. The North Carolina Constitution provided white children and colored children "shall be taught in separate public schools; but there shall be no discrimination in favor, or to the prejudice of, either race." The court evidently held in the cited cases that under the quoted constitutional provision separate buildings were required. There is a difference in the wording of Section 7, Article VII of the Texas Constitution with that of the North Carolina Constitution. However, even aside from this difference, we believe that we can draw a distinction between the situation under consideration, and those considered by the North Carolina Supreme Court. As we have stated heretofore, the Texas Constitution prohibits the teaching of both white and negro children at the same time in the same building or room. This would not be segregation. However, the teaching of colored students at a time when no

white students are being taught and when there is no inter-
mingling of members of the two races is not one and the same
thing, but, to our minds, something entirely different. The
latter situation was not before the North Carolina Supreme
Court, nor was it passed upon by the Court.

A conclusion other than the one which we have reached
would necessitate the consideration of another grave and seri-
ous question. The Abilene Independent School District evident-
ly does not afford machine shops to its negro students in the
school buildings for such students; otherwise the question
would not have been asked. To hold that negro students could
not use the machine shops in the manner as outlined in your
letter might amount to a discrimination condemned by the United
States Supreme Court in State of Missouri at the Relation of
Lloyd Gaines v. S. W. Canada, 305 U. S. 337, 83 L. Ed. 208.
In that case petitioner, a negro, was refused admission to the
School of Law of Missouri University. He then instituted ac-
tion for mandamus to compel the curators of the University to
admit him. The State of Missouri maintained no law school for
negro students, but it was provided by statute that the State
would pay the tuition fees for the attendance of such students
at a university of an adjacent state to take a course of study
offered at Missouri University but not offered Lincoln Univer-
sity, the negro university in Missouri. We quote the follow-
ing from the opinion of the Court, speaking through Mr. Chief
Justice Hughes:

".  . . The admissibility of laws separat-
ing the races in the enjoyment of privileges af-
forded by the State rests wholly upon the quality
of the privileges which the laws give to the
separated groups within the State. The question
here is not of a duty of the State to supply legal
training, or of the quality of the training which
it does supply, but of its duty when it provides
such training to furnish it to the residents of
the State upon the basis of an equality of right.
.  .  .  .

"The equal protection of the laws is 'a
pledge of the protection of equal laws'. Yiok
Wo v. Hopkins, 118 U. S. 356, 369, 30 L. ed. 220,
226, 6 S. Ct. 1064. . . ."

212

In view of our conclusion we are not called upon to consider whether there is discrimination, and we express no opinion thereon.

You state in your letter of request that there would be no white people in the building while the negro students are being trained, but that "there would naturally be an intermingling of negroes and white people at the beginning and end of the working period". If the so-called intermingling is merely incidental to the change in shifts and there is no social intercourse between students of the two races, we do not believe that the terms or spirit of the Constitution would be violated. We do not believe that this would be intermingling, but would be on the same level as white people passing negroes on the streets.

We do not hold in this opinion that the Board of Trustees of the Abilene Independent School District are compelled to train negro students in the high school machine shops. We simply hold that in the exercise of its authority, it may do so under the conditions outlined in this opinion. The Board would also be within its authority in refusing to admit negro students, at least so long as the facilities and accommodations afforded to negro students are substantially the same as those given to white students. Gaines v. Canada, supra.

This opinion passes only upon the fact situation which you have presented, and is expressly limited accordingly.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By *George W. Sparks*

George W. Sparks
Assistant

GWS:mp

APPROVED JUL 3, 1942

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY *BWB*
CHAIRMAN